THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOHN KRAMER,<br><br>Plaintiff,<br><br>v.<br><br>MANGO LABS, LLC, DAFYDD DURAIRAJ, and TYLER SHIPE<br><br>Defendants. | CIVIL No.: 24-1587 (GMM)<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COMES NOW Plaintiff John Kramer, through the undersigned attorneys, and very respectfully states, alleges and prays as follows:

**Introduction.**

The fallacy and duplicity at the heart of the response position of Defendants Mango Labs, LLC ("Mango"), Dafydd Durairaj ("Durairaj"), and Tyler Shipe ("Shipe"), is made glaringly apparent by Defendants' failure to use legal process against Plaintiff John Kramer, rather than engaging in unlawful self-help. According to Defendants, Mango filed a Complaint against Plaintiff (and Maximillian Schneider) on October 7, 2024 (the "October 7 Action") "alleging that they improperly misappropriated their positions as trusted Mango DAO members to purchase the FTX MNGO tokens at issue for their own benefit." (Defendants' Response Brief, page 9). In the October 7 Action, Defendants contend that John Kramer entered into an agreement with Mango DAO whereby he would buy back MNGO tokens that had been held by the FTX bankruptcy estate and transfer the tokens to the DAO at close to cost. Throughout Defendants' Response Brief, Defendants baldly and repeatedly assert that John Kramer possesses "fraudulently acquired"

1

MNGO tokens, as if saying so enough times will make it so.[1] The October 7 Action's prayer for relief includes a prayer for "[equitable or injunctive relief as permitted by law, including requiring that Defendants transfer the MNGO tokens unlawfully procured to the Mango DAO, as well as ***enjoining Defendants from using their unlawfully acquired MNGO tokens to vote in Mango governance votes*** pending the token transfer to the Mango DAO." Compl. at 35 (emphasis added). As such, Defendants are fully aware that in order to lawfully seek and obtain the relief they instead unlawfully garnered for themselves, they would need to apply to the Court for an injunction.

**Argument,**

### I. Defendants have asserted patently untrue "facts" to justify their actions.

The core of Defendants' claims against John Kramer in the October 7 Action as well as their response in this action is based entirely on two claimed facts: (1) John Kramer "fraudulently acquired" MNGO tokens that had been held by the FTX bankruptcy estate; and (2) John Kramer and some unidentified party had an agreement that John Kramer would sell the MNGO tokens acquired from the FTX bankruptcy estate to the DAO at close to cost. However, absent from Defendants' stated defense in this action, and their affirmative claims in the October 7 Action, is any evidence memorializing the alleged agreement whereby John Kramer purchased MNGO tokens that had been held by the FTX bankruptcy estate for the purpose of selling those tokens at close to cost to the DAO. This is because no such agreement exists in the first place, and there is no legal obligation for John Kramer to sell MNGO tokens to the DAO in any manner other than how he may choose to do so. In fact, the defendants can point to no statement at all by John Kramer, and just baldly make unsupported and malicious allegations of fraud and deceit. This of course is

---

[1] Defendants describe Plaintiff's tokens as "fraudulently acquired" 12 times in the Response Brief.

2

Document3

the very reason why Defendants did not seek a preliminary injunction freezing the MNGO tokens they claim were "fraudulently acquired" in the October 7 Action. Defendants know full well that they could never present to the Court any facts, let alone compelling facts, entitling them to entry of a preliminary injunction against John Kramer. Instead, as set forth in Plaintiff's Motion papers, Defendants engaged in unlawful self-help that if left in place deprives Plaintiff of his property and his property rights and if not reversed will result in irreparable harm.

Put simply, if, as is the case here, Defendants are unable to establish to the Court that they are entitled to a preliminary injunction freezing Plaintiff's MNGO tokens and preventing his participation in the DAO governance, they then cannot be permitted to take such actions on their own. In this regard, Defendants' Response Brief contains "tells" of the real purpose behind Defendants' unlawful actions depriving Plaintiff of his ability to participate in the governance of the Mango DAO. At Page 25 of Defendants' Response Brief, Defendants state "[i]t has been the status quo for years that Durairaj and Shipe have significant voting power in the Mango DAO." At Page 4 of Defendants' Response Brief, Defendants assert "Kramer has no basis to suggest that the status quo – which has been maintained for years – poses any risk of irreparable harm to him or anybody else." The obvious purpose behind Defendants' unlawful actions is to maintain Defendant's control of the Mango DAO at all costs. Indeed, the fact that Defendants exceeded their authority and voted to give themselves 8 times the voting power of other DAO members is irrefutable proof that the actual purpose of their actions is to deprive Plaintiff of his voting power within the DAO and his lawful ability to advocate governance actions of the DAO that may be contrary to the wishes of Defendants.² What would this Court do if an aggrieved shareholder of a

---

² Defendant Durairaj further reveals this intent by asserting that if there is a dissolution of the treasury "the DAO would set aside the pro-rata amount the of the treasury needed to satisfy any cash-out from the frozen tokens." (Defendants Response Brief, Exhibit A at ¶ 33). The only way

3

corporation sought to prevent another shareholder from claiming, without authority and for his own benefit, that the latter's shares now had eight (8) times voting power while the former's shares were useless and valueless?

Also obvious is that Defendants for their own improper purposes contrived a false reason to act in the manner that they did by labeling Plaintiff's purchase of MNGO tokens that had been held by the FTX bankruptcy estate as "fraudulently acquired."    As set forth in the Certification of John Kramer,  there was nothing fraudulent about the acquisition of the MNGO tokens. Indeed, Defendants were not a party to Plaintiff's acquisition of the MNGO tokens and the seller of those tokens to Plaintiff, having received the negotiated acquisition price from Plaintiff as buyer, has not asserted that the MNGO tokens were "fraudulently acquired" from it. Defendants' defense of its actions is based upon the false premise that the MNGO tokens were "fraudulently acquired" by Plaintiff and therefore he cannot participate in the governance of the Mango DAO. Or that he somehow is obligated to transfer the MNGO Tokens to the DAO at his cost.  Defendants can point to no statement made by Plaintiff about the purchase of the "fraudulently acquired" MNGO Tokens prior his purchase of those tokens, because there are none.  John Kramer made a lawful purchase of MNGO Tokens, from a willing seller, which any other individual, whether a DAO member or not, could have done.  Once again knowing that Defendants cannot  establish to this Court that the MNGO tokens were fraudulently acquired by Plaintiff, instead of seeking a preliminary injunction against John Kramer (which would not be granted),  Defendants opted to engage in unlawful self-help to the continuing harm of Plaintiff.

---

he could make such assurances is if he was in full control of the DAO and its treasury, and could act to his own desire, regardless of the votes of any other DAO member.

Another chapter of the canard Defendants have presented to the Court to try and justify their unlawful actions is that Plaintiff had "fiduciary duties" owing to the Mango DAO and that he acted in a manner antithetical to those duties. However, nowhere to be found in Defendants' Response Brief (or for that matter in the October 7 Action) is any presentation of facts where such fiduciary duties are established and articulated, how such fiduciary duties are imposed upon John Kramer, or any evidence that John Kramer agreed to bind himself to any articulated and established fiduciary duties, or even more significantly any law upon which such a theory might be based. This is because no such fiduciary duties exist. Mango DAO is an unincorporated organization composed of holders of MNGO Tokens, none of which have a fiduciary duty to other holders of MNGO tokens. The notion that John Kramer owes a fiduciary duty to the Mango DAO is contrived by Defendants and has no basis in law or fact.[3]

II.  Plaintiff is entitled to a preliminary injunction enjoining Defendants' actions.

Defendants have acted intentionally and without authority to deprive Plaintiff of his property, and the right to participate in the governance of the Mango DAO. Contrary to the contentions of Defendants, the results of their unlawful actions are not quantifiable and therefore compensable by money damages only. Rather, by their action Defendants for their own improper purposes obviously intended to maintain absolute control of the Mango DAO have deprived Plaintiff of his ability to participate in the governance of the DAO. One of the major concerns set forth in Plaintiff's initial moving papers is that Defendants could vote to dissolve the DAO and/or distribute the treasury which would inure primarily to their benefit. As set forth in the Certification

---

[3] Respondents baldly assert that the Mango DAO is "an independently cognizable entity" and cite two cases applying California partnership law to DAOs.  Opp. at p. 14. Respondents do not describe what type of entity the Mango DAO might be, or under the law of which jurisdiction such a determination should be made.   (In the October 7 Action they do not characterize the DAO as "an independently cognizable entity" or any other kind of entity.)

5

of John Kramer, those efforts by Defendants have, since the filing of this action, accelerated, with Plaintiff currently having no ability to participate in that ongoing discussion, as is his right as a MNGO token holder. This too is intentional by Defendants. The continuing inability of Plaintiff to participate in the governance of Mango DAO is not compensable by money damages.

In addition, it must be noted that Defendants do not dispute they have deprived Plaintiff of the ability to utilize his MNGO tokens. Incredibly, Defendants instead baldly state the following: "The freeze action is temporary. The freeze action is only during the pendency of the case." (Defendants' Response Brief, Page 23). This is not actually what Defendant Durairaj said in his statement after taking the action (December 12 Statement). In that statement he said "the addresses [. . .] are frozen or nullified until a settlement or court order requires their release." (Defendants' Response Brief, Exhibit A, Exhibit 8). Whether the statement made in the Brief, or the December 12 Statement are the truth, either way, this truly is an extraordinary statement. Defendants essentially tell this Court to ignore the fact that they have not established in any way any wrongdoing on the part of Plaintiff, but do not worry, we (Defendants) shall only deprive John Kramer of his property and property rights so long as the case (which case is not clear) is pending. The damage to Plaintiff by Defendants' misconduct in such a case as this is not quantifiable insofar as unlawfully depriving Plaintiff of the ability to utilize his MNGO tokens in any manner he sees fit on its face results in unspecifiable damages not compensable by money damages alone.

While Plaintiff has shown that Defendants' intentional and actionable conduct has caused and continues to cause irreparable harm to him, 18 U.S.C. Section 1030(g) expressly provides that where, as here, a person has sustained damages in excess of $5,000 in any one-year period as a result of a violation of Section 1030, any person who suffers damage may seek to obtain

6

compensatory damages and injunctive relief or other equitable relief. John Kramer's tokens are worth far in excess of $5,000, and they have been converted by the defendants.

Additionally, the conversion of the tokens and the loss of John Kramer's ability to participate in the decisions of the Mango DAO are, in and of itself, irreparable harm. But it must be emphasized that 18 U.S.C. § 1030(g) contains no irreparable harm requirement. All that is required is that the elements of the statute are met, which John Kramer has clearly achieved in his Verified Complaint and Certification. John Kramer is seeking an injunction based upon the statute and on equitable grounds, and he has submitted overwhelming proof – with the further assistance of the defendants in their submission – that is entitled to temporary and preliminary relief under both grounds.

III. Defendants have violated the CFAA.

Defendants argue that they could not have violated the CFAA because they had been granted access to the software in question. (Defendants' Response Brief, Pages 17-18.) Their argument proves too much. The idea that having any authority at all means there can be no violation of the CFAAt renders the language "without authorization" and "exceeds authorized access" meaningless. 18 U.S.C. § 1032(a)(2). Defendants' reliance on *Van Buren,* and similar cases is misplaced. In *Van Buren*, a police officer was charged with violations of the CFAA because he ran a license plate search in a law enforcement computer data base in exchange for money. Van Buren v. United States, 593 U.S. 374, 378, 141 S. Ct. 1648, 1652, 210 L. Ed. 2d 26 (2021). The parties in Van Buren agreed that the officer accessed a computer without authorization. Van Buren v. United States, 593 U.S. at 382. The only dispute in Van Buren was whether the officer obtained information that he was not "entitled to so obtain." Id.

7

Plaintiff makes no allegation that Defendants obtained information that they were not entitled to obtain. Rather, Plaintiff alleges that Defendants:

"knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period," claims which sound in a different section of the CFAA -- 18 U.S.C. 1030(a)(4) than that at issue in *Van Buren*.

In *Van Buren*, like in this case, the officer had access to the software, and authority to use it for specific purposes. Like the officer in *Van Buren*, Defendants accessed and modified that software for purposes for which they had no authorization, and like the officer in *Van Buren* such access was "unauthorized" for the purposes of the CFAA.

Defendants inaccurately state that Plaintiff has not plead the necessary "intent to defraud." As noted in Plaintiff's moving papers, the "intent to defraud" as used in 18 U.S.C. § 1030(a)(4) is meant to differentiate between cases where the access to a computer is without the intent of taking something of value and those cases, like this one, where such access was with the intent of taking something of value. See, United States v. Czubinski, 106 F.3d 1069, 1079 (1st Cir. 1997). Plaintiffs clearly alleged, and Defendants admit, that they accessed a protected computer and changed the code of the software for the sole and purpose of depriving Plaintiff of the use of approximately $12.9m of MNGO Tokens for an indefinite period. Defendants' fraud is exacerbated, not ameliorated by their statements before and after their unauthorized access to the Mango DAO software. Defendant Durairaj's "public discussion" included a rehashing of the unproven and false allegations made in the October 7 Action. Never did either Defendant disclose

8

even the possibility of using the Upgrade Council to freeze Plaintiffs MNGO Tokens prior to taking such action. It was only *after* the action was taken that public disclosure was made. And, as discussed in Plaintiff's moving papers, even this public disclosure contained demonstrably false justifications. Like the false statement that Plaintiff had obtained an "unassailable block of voting power."

WHEREFORE, it is respectfully requested WHEREFORE, respondent respectfully prays this Court (a) issue a Temporary Restraining Order returning the parties to the status quo ante by directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order; and, (b) issue a Preliminary Injunction directing the immediate rescission of the actions taken by Defendants as referenced in the December 11 Announcement and any subsequent actions undertaken by Defendants and enjoining Defendants from taking any action that impairs or interferes with Plaintiff's disposition of assets including but not limited to Plaintiff's Tokens or otherwise violates federal law or any existing Court Order.

In San Juan, Puerto Rico, this 17th day of January, 2025.

I hereby certify that on this same date, I uploaded a pdf version of this document to the court's CM/ECF system, which will send notice electronically of its filing to all parties of record, through their counsel of record.

Respectfully submitted,

S/ FRANCISCO E. COLÓN-RAMÍREZ
Francisco E. Colón-Ramírez, Esq.
Bar No.: 210510
E-mail: fecolon@colonramirez.com
**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (888) 223-2364
Fax: (787) 425-4731